**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

KYLE W. LAUKUS,

Plaintiff,

v.

UNITED STATES, *et al.*,

Defendants.

Civil Action No. 09-475 (CKK)

**MEMORANDUM OPINION**
(March 8, 2010)

Plaintiff Kyle W. Laukus filed this action against the United States and the Internal Revenue Service ("IRS") (collectively, "Defendants") claiming that the government has engaged in unlawful tax collection activities. Defendant United States has moved to dismiss the complaint for improper venue, lack of subject matter jurisdiction, and failure to state a claim upon which relief can be granted.[1] As explained below, Laukus has failed to rebut, and thereby conceded, Defendant's argument that venue is improper in this district, and the Court finds that a transfer in lieu of dismissal is not in the interest of justice. Alternatively, even if venue were proper, the Court would dismiss Laukus's claims for either lack of subject matter jurisdiction or failure to state a claim upon which relief can be granted. Accordingly, the Court shall GRANT Defendant's [6] Motion to Dismiss the Complaint.

---

[1] Defendant IRS has not joined Defendant United States's motion to dismiss. As explained below, the IRS cannot be named as a proper defendant in this action. For consistency with the parties' filings, however, the Court shall use "Defendants" to refer to both the United States and the Internal Revenue Service and "Defendant" to refer solely to the United States as the moving party.

## I. FACTUAL BACKGROUND

The following facts are drawn from the allegations of the Complaint.

Plaintiff Kyle W. Laukus maintains an address at 4209 Red Arrow Highway in Benton Harbor, Michigan. Compl. at 1. From 1998 to 2003, Laukus received compensation for his labor in the form of wages. *Id.* ¶ 3. Laukus contends that he did not earn or receive compensation as "income, gross income or taxable income" in the amount of $334,204.96 during these years and does not have an existing tax liability to the United States. *Id.* ¶ 6. Laukus further contends that he has fully satisfied and paid all income taxes for tax years 1998 through 2003. *Id.* ¶ 7. Laukus asserts that he "did not receive any profit or gain for compensation received for tax years 1998 through 2003 and does NOT owe the UNITED STATES, or any employees working on its behalf, the fruit of his labor property." *Id.* ¶ 8.

From August 12, 2004 through May 16, 2006, Laukus received copies of four IRS Forms 668(Y)(c) - "Notice of Federal Tax Lien" ("NFTL"). Compl. ¶ 9. Laukus attached these forms as Exhibit B to his Complaint and contends that they were "procedurally improper" and "legally unenforceable." *Id.* The first NFTL was issued against taxpayer American Pride Trust for $82,231.31 and was signed by the IRS on August 12, 2004. *Id.*, Ex. B (8/12/2004 NFTL). The second NFTL was issued against taxpayers Renee L. and Kyle W. Laukus for $99,419.93 and was signed by the IRS on May 9, 2006. *Id.*, Ex. B (5/9/2006 NFTL). The third and fourth NFTLs were issued against taxpayer Kyle W. Laukus for $301,215.59 and were signed by the IRS on May 11 and 16, 2006, respectively. *Id.*, Ex. B (5/11/2009 NFTL, 5/16/2009 NFTL). On August 7, 2006, Laukus received copies of two IRS Forms 668-A(ICS) - "Notice of Levy" issued to Chemical Bank Shoreline in Benton Harbor, Michigan: one against taxpayer American Pride Trust for tax years 1999-2001 in the amount of $181,936.34 and the other against taxpayer Kyle

W. Laukus for tax years 1999-2001 in the amount of $334,204.96. *Id.* ¶ 10 & Ex. C (Notices of Levy). Laukus contends that the Notice of Levy against him disclosed his "return information" to an unauthorized third party. *Id.* ¶ 10. Around three days later, Laukus received two letters from Chemical Bank informing him that they had received the Notices of Levy against his American Pride Trust account and his personal account and that $3164.99 and $13,816.47 had been seized from those accounts, respectively. *Id.* ¶ 11. On or about August 28, 2006, the IRS issued a Form 668-B (ICS) - "Levy" against American Pride Trust in the amount of $111,077.81. *See* Compl. ¶ 12 & Ex. D (Levy). On or about August 30, 2006, a Notice of Seizure was issued to American Pride Trust pertaining to certain property situated in the Township of Benton, County of Berrien, Michigan. *Id.* ¶ 13 & Ex. D (Notice of Seizure).

Laukus subsequently filed numerous forms with various IRS personnel which he claims have resulted in no response from the IRS. *See* Compl. ¶¶ 14-18. From about November 17, 2006 through July 31, 2007, Laukus served completed Forms 12661 - "Disputed Issue Verification" and 843 - "Request for Abatement" contesting alleged penalty assessments in response to multiple "Notices CP504" received referencing the amount due for tax years 2001-2003. *Id.* ¶ 14.[2] On or about February 12, 2007, Laukus served a completed Form 12203 - "Request for Appeals Review" attached to an affidavit of "Notice of Intent to Remain in Compliance with the Internal Revenue Laws" in reponse to "Letter 3176C." *Id.* ¶ 15. Around April 18, 2007, Laukus served another completed Form 12203 - "Request for Appeals Review" attached to a notice that contested and disputed alleged tax liabilities in response to three "Notices CP15" dated April 2, 2007, that referenced $1500 as penalty assessments for tax years

[2] Laukus states that he served these forms on the Cincinnati Service Center, Area 6 Director and the Compliance Technical Support Manager. Compl. ¶ 14.

2001-2003. *Id.* ¶ 16. Laukus also served Forms 12203 - "Request for Appeals Review" on or about May 31, 2007 and July 13, 2007. *Id.* ¶¶ 17-18.

On or about July 11, 2007, the seized property in Benton Township was sold at auction for $27,000. Compl. ¶ 19 & Ex. D (Certificate of Sale of Seized Property). On October 15, 2007, the IRS sent a letter to American Pride Trust indicating that the proceeds from the sale had been applied to its tax liability and that its outstanding balance, including accrued interest and penalties, was $90,735.62. *See* Compl., Ex. D (Letter 3047).

On January 25, 2008, Laukus sent a letter to the IRS captioned "Verified Notice of Administrative Claim, Demand to Release or Withdraw the Legally Unenforceable Notices of Federal Tax Lien and Notices of Levy, and Return Seized Property." *See* Compl. ¶ 20 & Ex. A (Administrative Claim Letter). Laukus asserts that this letter satisfied the requirements of 26 C.F.R. § 301.7433-1(e)(1), which provides procedures for filing an administrative claim for damages for certain unauthorized collection actions. *Id.* ¶ 20. In his Administrative Claim Letter, Laukus claimed, *inter alia*, that "The [Internal Revenue] Code And IRS Employees Failed To Impose A Tax Liability Creating The Basis For An Assessment," arguing that the federal laws do not define what constitutes "taxable income" and therefore IRS employees failed to establish that Laukus had any tax liabilities. *Id.*, Ex. A (Administrative Claim Letter) at 7-8. On February 1, 2008, Laukus filed an Application for Withdrawal of Filed Form 668(Y), Notice of Federal Tax Lien, alleging that the four NFTLs were filed prematurely or not in accordance with IRS procedures. *See id.*, Ex. A (Application for Withdrawal).

Laukus asserts that Defendants have "engaged in unlawful collection activity because they did not establish when, where or how [Laukus's] personal compensation received from his labor property was involved, used, or intended to be used, in violation of the internal revenue

laws. *Id.* ¶ 23. Laukus contends that he "was not then and is not now seeking to restrain the lawful assessment or collection of any internal revenue tax, but is disputing the unlawful collection activity and taking of personal property" by Defendants. *Id.* ¶ 24.

## II. STANDARD OF REVIEW

### *A. Motion to Dismiss for Improper Venue Under Rule 12(b)(3)*

Defendant argues that the District of Columbia is an improper venue for this case and that it should be dismissed pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(3). "In considering a Rule 12(b)(3) motion, the court accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor." *Darby v. U.S. Dep't of Energy*, 231 F. Supp. 2d 274, 276 (D.D.C. 2002). Nevertheless, a plaintiff "bears the burden of establishing that venue is proper." *Varma v. Gutierrez*, 421 F. Supp. 2d 110, 113 (D.D.C. 2006) (internal quotations omitted); *see also Freeman v. Fallin*, 254 F. Supp. 2d 52, 56 (D.D.C. 2003) ("[b]ecause it is the plaintiff's obligation to institute the action in a permissible forum, the plaintiff usually bears the burden of establishing that venue is proper").

### *B. Motion to Dismiss for Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)*

A court must dismiss a case pursuant to Rule 12(b)(1) when it lacks subject matter jurisdiction. In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coalition for Underground Expansion*, 333 F.3d at 198 (citations omitted); *see also Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction.").

"At the motion to dismiss stage, counseled complaints, as well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005). In spite of the favorable inferences that a plaintiff receives on a motion to dismiss, it remains the plaintiff's burden to prove subject matter jurisdiction by a preponderance of the evidence. *Am. Farm Bureau v. Envtl. Prot. Agency*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000). "Although a court must accept as true all factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1), [a] plaintiff['s] factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal citations and quotation marks omitted).

*C. Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6)*

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id*. at 1964-65; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986). Instead, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged."). However, as the Supreme Court recently made clear, a plaintiff must provide more than just "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1950. Where the well-pleaded facts set forth in the complaint do not permit a court, drawing on its judicial experience and common sense, to infer more than the "mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief. *Id.* at 1950.

Where, as here, the action is brought by a *pro se* plaintiff, the Court must take particular care to construe the plaintiff's filings liberally, for such complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## III. DISCUSSION

### *A. Improper Venue*

Defendant moves the Court to dismiss this action for improper venue pursuant to Rule 12(b)(3). To the extent that Laukus brings this action pursuant to 28 U.S.C. § 1346 for the

recovery of internal revenue taxes alleged to have been unlawfully assessed or collected,[3] venue is proper only in the district where Laukus resides. *See* 28 U.S.C. § 1402(a)(1). From the face of the Complaint and the attached exhibits, it is apparent that Laukus resides in Michigan. *See* Compl. at 1-2 (listing mailing address in Benton Harbor, Michigan); *id.*, Ex. B (5/11/2006 NFTL) (indicating Laukus resides in Benton Harbor, Michigan). In his Complaint, Laukus contends that venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391(g). *See* Compl. at 2. However, § 1391(g) is clearly inapplicable because it only governs venue in cases where the jurisdiction of the district court is based on 28 U.S.C. § 1369, which deals with multiparty, multiforum litigation. *See* 28 U.S.C. §§ 1369, 1391(g).

Laukus does not argue in his opposition brief that venue is proper in this District. *See* Pl.'s Opp'n ¶¶ 44-46 (arguing only that jurisdiction does not depend on proper venue and that the action may be transferred if venue is improper). "It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *See Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003), *aff'd*, 98 Fed. Appx. 8 (D.C. Cir. 2004); *Day v. D.C. Dep't of Consumer & Regulatory Affairs*, 191 F. Supp. 2d 154, 159 (D.D.C. 2002) ("If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as

[3] Section 1346(a) provides that federal courts have original jurisdiction of "[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws."

conceded.")[4] Accordingly, the Court shall treat Defendant's argument that venue is improper as conceded.

When faced with an action laying venue in the wrong district, the court must either dismiss the action or, "if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The decision of whether a transfer or dismissal is in the interests of justice rests with the sound discretion of the district court. *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983). The interest of justice generally requires transferring such cases instead of dismissing them. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962). However, if no court would have subject matter jurisdiction over a claim, the court must dismiss because there is no appropriate transferee court. In addition, dismissal may be appropriate where there are obvious substantive problems with the plaintiff's claims. *See Phillips v. Seiter*, 173 F.3d 609, 610-11 (7th Cir. 1999) (holding that it is appropriate for district courts to take a "peek at the merits" when deciding whether a transfer is in the interests of justice); *Buchanan v. Manley*, 145 F.3d 386, 389 n.6 (D.C. Cir. 1998) (finding no abuse of discretion where district court concluded that transfer would not be in the interests of justice where there were "substantive problems" with the plaintiff's claims). Defendant urges the Court to dismiss rather than transfer this action because it contends that any court would lack jurisdiction over most of Laukus' claims and that the remaining counts fail to state a claim upon which relief can be granted. Accordingly, the Court shall review Defendant's contentions with respect to each of the claims asserted by Laukus in order to determine whether a transfer is

---

[4] Because Laukus has brought this action *pro se*, the Court issued an order pursuant to *Fox v. Strickland*, 837 F.2d 507 (D.C. Cir. 1988), advising Laukus that if he failed to respond to Defendant's motion to dismiss, the Court might treat the motion as conceded. *See* [7] Order (June 25, 2009).

appropriate in the interests of justice.

*B. Claims for Quiet Title Under 28 U.S.C. § 2410*

In Counts I, II, and III of the Complaint, Laukus brings claims for quiet title under 28 U.S.C. § 2410, which provides that the "United States may be named a party in any civil action or suit in any district court . . . having jurisdiction of the subject matter . . . to quiet title to . . . real or personal property on which the United States has or claims a mortgage or other lien." 28 U.S.C. § 2410(a). "It is elementary that the United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain that suit." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (citation omitted). Moreover, "a waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'" *Id.* (citing *United States v. King*, 395 U.S. 1, 4 (1969)). Section 2410 "waives sovereign immunity in cases that challenge the procedural regularity of a tax lien." *White v. U.S. Gov't Dep't of Treasury*, 969 F. Supp. 321, 324 (E.D. Pa. 1997). However, § 2410 does not authorize a challenge to the underlying tax assessment itself. *See Pollinger v. United States*, 539 F. Supp. 2d 242, 251 (D.D.C.) ("[T]he principle that a taxpayer cannot use section 2410(a) to challenge the extent of, or existence of, substantive tax liability is well-settled.") (quoting *Robinson v. United States*, 920 F.3d 1157, 1161 (3d Cir. 1990). Thus, § 2410 "constitutes a waiver of sovereign immunity to a suit brought by a taxpayer against the United States which challenges the validity of a federal tax lien and sale so long as the taxpayer refrains from contesting the merits of the underlying tax assessment itself." *Aqua Bar & Lounge, Inc. v. U.S. Dep't of Treasury*, 539 F.2d 935, 939-40 (3d Cir. 1976).

In Counts I, II, and III, Laukus seeks quiet title to certain real and personal property which has been subjected to the NFTLs and Notices of Levy filed by the IRS. *See* Compl. ¶¶ 25-67.

Laukus alleges that the liens and levies are procedurally invalid because the IRS failed to make an assessment, send a pre-assessment notice of deficiency, make notice and demand for payment before issuing a NFTL, provide a pre-levy administrative hearing, and provide notice before levy, all with respect to tax years 1999 through 2003. *See* Compl. ¶¶ 32-35, 46-49, 62-65 (alleging violations of 26 U.S.C. §§ 6203, 6212-13, 6303, 6330 and 6331). Defendant argues that Laukus is actually making a de facto challenge to the merits of the underlying tax assessment and therefore his quiet title claims are not actionable under § 2410. *See* Def.'s Mem. at 7. Laukus argues in his opposition that he is only attacking the procedural validity of the liens and levies and disclaims any attack on the validity of the assessment. *See* Pl.'s Opp'n at 5-8.

Where a plaintiff makes clear, through the pleadings or other papers filed with the court, that his quiet title action is really a suit to challenge tax liability, the court may find it to be outside the scope of § 2410 and not within the waiver of sovereign immunity. *See Harrell v. United States*, 13 F.3d 232, 235 (7th Cir. 1993). This Court has previously held that where a plaintiff is challenging his tax liability based on the failure to assess taxes, there is no waiver of sovereign immunity under § 2410. *See Pollinger*, 539 F. Supp. 2d at 250-51; *Boritz v. United States*, Civ. Action No. 09-542, 2010 WL 621845, at *7 (D.D.C. Feb. 23, 2010). Although Laukus has identified purportedly procedural defects in the lien, it is clear from his Complaint that he believes no valid assessment could have been made because he believes that his wages do not constitute taxable income. *See* Compl. ¶¶ 3-8; *id.* ¶ 23 ("Defendants have engaged in unlawful collection activity because they did not establish when, where or how Plaintiff Kyle W. Laukus' personal compensation received from his labor property was involved, used, or intended to be used, in violation of the internal revenue laws.") Moreover, in the Administrative Claim Letter Laukus filed with the IRS and attached to the Complaint, Laukus explains his belief that

the internal revenue code imposes no tax liability on him because it fails to define what constitutes taxable income and that "at no time has [Laukus] ever been made liable for any tax imposed by [the Internal Revenue Code]." *See* Compl., Ex. A (Administrative Claim) at 7-8. Because Laukus has not "refrain[ed] from contesting the merits of the underlying tax assessment itself," the federal courts lack jurisdiction over Laukus's quiet title claims.

In addition, the Court lacks jurisdiction over Counts II and III to the extent that Laukus is seeking quiet title to property that has already been seized by the government. In Count II, Laukus seeks quiet title to $334,204.96 that he earned as wages and against which the IRS filed Notices of Federal Tax Liens and Notices of Levy and which were seized in part. *See* Compl. ¶¶ 42-45. In Count III, Laukus seeks quiet title to certain real property that was levied and seized to satisfy a Notice of Federal Tax Lien against American Pride Trust. *See id.* ¶¶ 56-67. Laukus's claims with respect to seized property do not fall within the waiver of sovereign immunity in § 2410 because the government has now acquired title to that property and no longer "claims a mortgage or other lien" on it. *See Harrell*, 13 F.3d at 234; *White*, 969 F. Supp. at 324.

Accordingly, the Court must grant Defendant's motion to dismiss with respect to Counts I, II, and III.

*C. Claims for Damages for Unauthorized Collection Actions Under 26 U.S.C. § 7433*

In Counts IV, V, VI, VII, X, XI, and XIII of the Complaint, Laukus brings claims under 26 U.S.C. § 7433, which provides the exclusive remedy for damages arising out of unauthorized collection actions, except for claims brought under § 7432 for damages arising out of failure to release a lien. *See* 26 U.S.C. § 7433(a). Section 7433 provides that "[i]f, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal

Revenue Service recklessly or intentionally, or by reason of negligence disregards any provision of [the Internal Revenue Code], or any regulations promulgated under [the Internal Revenue Code], such taxpayer may bring a civil action for damages against the United States." *Id.* Defendant argues that Laukus is barred from obtaining relief under § 7433 because the statute of limitations has run on his claims or, alternatively, because he lacks standing to assert them. *See* Def.'s Mem. at 7-8. A defendant may raise the affirmative defense of statute of limitations on a motion to dismiss when the facts that give rise to that defense are clear from the face of the complaint. *Smith-Thompson v. District of Columbia*, 657 F. Supp. 2d 123, 130 (D.D.C. 2009).

It is clear that Laukus lacks standing to bring a claim under § 7433 for damages incurred in connection with the collection of taxes from American Pride Trust. Section 7433 confers standing only on the taxpayer whose taxes are collected. *Allied/Royal Parking L.P. v. United States*, 166 F.3d 1000, 1004 (9th Cir. 1999); *Wittmann v. United States*, 869 F. Supp. 726, 731-32 (E.D. Mo. 1994). Therefore, to the extent that Laukus asserts claims on behalf of American Pride Trust, his claims must be dismissed for lack of subject matter jurisdiction.[5]

With respect to the statute of limitations, § 7433 requires that actions be brought within two years after the right of action accrues. *See* 26 U.S.C. § 7433(d)(3). A cause of action under § 7433 accrues on the date of the alleged adverse action by the IRS. *See Davis v. United States*, 569 F. Supp. 2d 91, 97 (D.D.C. 2008). The allegations in Counts IV-VII, X-XI, and XIII pertain to activity that occurred "[o]n or about August 7, 2006, or soon thereafter." *See* Compl. ¶¶ 69, 73, 77, 81, 95, 98, 110. This action was filed on March 9, 2009. Therefore, it appears that the statute of limitations bars Laukus's § 7433 claims. Laukus completely failed to address the

---

[5] Laukus does not clearly delineate the extent to which he is seeking damages on behalf of American Pride Trust as opposed to himself.

statute of limitations issue in his opposition to Defendant's motion to dismiss. Accordingly, as explained above, the Court may treat this argument as conceded.

There are also other problems with some of Laukus's § 7433 claims. For example, Count V alleges that Defendants failed to make a tax assessment pursuant to the procedures in 26 U.S.C. § 6203. *See* Compl. ¶¶ 72-75. However, this claim is not actionable under § 7433's waiver of sovereign immunity for damages resulting from unauthorized collection activity. As this Court has previously held, § 7433 is limited to alleged violations of law by the IRS in connection with tax *collection* and "'does not provide a cause of action for wrongful tax assessment or other actions that are not specifically related to the collection of income tax.'" *Pollinger*, 539 F. Supp. 2d at 255-56; *Boritz*, 2010 WL 621845 at *10-11 (holding that violations of § 6203 do not fall within § 7433); *see also Jaeger v. United States*, 524 F. Supp. 2d 60, 63-64 ("[S]ection 7433 does not provide a cause of action for wrongful tax assessment, the absence of a tax assessment, or other actions not related to the collection of income tax."). Count XI alleges that Defendants violated 26 U.S.C. § 6103 by unnecessarily disclosing Laukus's confidential return information in the Notice of Levy that was issued on Laukus's property. *See* Compl. ¶¶ 98-100. However, as this Court explained in *Pollinger*, a notice of levy does not give rise to an unauthorized disclosure action because the statute and its implementing regulations permit disclosure to the extent necessary to levy assets. *See* 539 F. Supp. 2d at 253.

Because of the foregoing problems with Laukus's § 7433 claims, the Court finds that it is not in the interests of justice to transfer these claims to another district. Accordingly, the Court shall grant Defendant's motion to dismiss with respect to Counts IV, V, VI, VII, X, XI, and XIII.

*D. Claims for Damages for Failure to Release Lien Under 26 U.S.C. § 7432*

Counts VIII and IX are brought under 26 U.S.C. § 7432, which provides a remedy for

damages resulting from the IRS's failure to release a lien. Specifically, Laukus alleges that the IRS failed to release the lien against him in violation of 26 U.S.C. § 6325 after he filed his Application for Withdrawal and his Administrative Claim Letter in 2008. *See* Compl. ¶¶ 85-93. Section 6325(a) provides in pertinent part that "the Secretary shall issue a certificate of release of any lien imposed with respect to any internal revenue tax not later than 30 days after the day on which . . . [t]he Secretary finds that the liability for the amount assessed, together with any interest in respect thereof, has been fully satisfied or has become legally unenforceable." 26 U.S.C. § 6325(a). The applicable Treasury Regulation explains that § 6325 requires the government to release a lien after the "satisfaction of the tax in full or . . . the expiration of the statutory period for collection." *See* 26 C.F.R. § 301.6325-1(a). Because there is no allegation that the lien was fully satisfied, Laukus's claim is necessarily based on the premise that the lien was legally unenforceable.

Defendant contends that Laukus's claims are actually an attack on the validity of the tax assessments against him and therefore are not encompassed by the waiver of sovereign immunity in § 7432. *See* Def.'s Mem. at 8-9. The Court agrees. As with Laukus's quiet title claims, Counts VIII and IX are premised on the theory that the liens are legally unenforceable because the IRS had no authority to impose a lien on him in the first place. *See* Compl., Ex. A (Administrative Claim) at 7-8 (discussing Laukus's theory that federal law does not specifically define what constitutes "income" and therefore the IRS cannot impose tax liability for Laukus's wages). Section 7432, however, "simply was not enacted to allow taxpayers to litigate the merits of assessments." *PCCE, Inc. v. United States*, 159 F.3d 425 (9th Cir. 1998). Taxpayers seeking to challenge the validity of their tax assessments must do so according to the proper statutory procedures for doing so, such as petitioning for a redetermination in Tax Court or filing a refund

action under 26 U.S.C. § 7422. *Morell v. United States*, 185 F.R.D. 116, 119 (D.P.R. 1999). Because Laukus is attempting to use the damages provision in § 7432 to circumvent the tax code's procedures for protesting his assessment, his claims must fail. Accordingly, the Court must dismiss Counts VIII and IX of the Complaint for lack of subject matter jurisdiction.

*E. Claim for Review Under the Administrative Procedure Act*

Count XII of the Complaint seeks relief under the Administrative Procedure Act, 5 U.S.C. §§ 500 *et seq*. Specifically, Laukus contends that Defendants exceeded the scope of their statutory authority under 26 U.S.C. § 6331 when they issued Notices of Levy on Laukus's property and that the Court should award declaratory and injunctive relief. *See* Compl. ¶¶ 103-08; 5 U.S.C. § 706 ("The reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right . . . .") Defendant argues that the Court lacks subject matter jurisdiction over Count XII because the APA does not provide a waiver of sovereign immunity with respect to suits concerning tax assessment or collection. *See* Def.'s Mem. at 9. Defendant is correct.

Claims for injunctive relief under the APA that concern the assessment or collection of federal taxes are barred by the Anti-Injunction Act, which provides that except for suits brought under certain provisions not applicable here, "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person." 26 U.S.C. § 7421(a); *Ross v. United States*, 460 F. Supp. 2d 139, 149 (D.D.C. 2006); *see also Murphy v. IRS*, 493 F.3d 170, 174 (D.C. Cir. 2007) ("Congress has preserved the immunity of the United States from declaratory and injunctive relief with respect to all tax controversies except those pertaining to the classification of organizations under § 501(c) of the [IRC].") Because Laukus's APA claim clearly relates to the IRS's tax collection activity, it is barred by the Anti-Injunction Act.

Without a waiver of sovereign immunity, the Court lacks subject matter jurisdiction and therefore must dismiss Count XII.

*F. Defendant Internal Revenue Service*

Defendant Internal Revenue Service has not joined in Defendant United States' motion to dismiss. However, as this Court has previously explained, the IRS cannot be sued *eo nomine* for claims relating to tax collection under 26 U.S.C. §§ 7432 and 7433. *See Pollinger*, 539 F. Supp. 2d at 250; 26 U.S.C. §§ 7432-33 (providing that taxpayers may only "bring a civil action for damages against the United States.") Similarly, the statutory waiver of sovereign immunity for quiet title actions provides that only "the United States may be named a party." 28 U.S.C. § 2410. Although the IRS may be a proper defendant in an action brought under the APA, the IRS shares the sovereign immunity of the United States, which, as explained above, has not been waived with respect to claims relating to tax collection activity. *Murphy*, 493 F.3d at 174-75. Therefore, Laukus's claims against the IRS must be dismissed.

**IV. CONCLUSION**

The Court finds that Laukus has failed to rebut, and thereby conceded, Defendant's argument that venue is improper in this District. Upon evaluation of Laukus's substantive claims, the Court finds that transfer in lieu of dismissal is not in the interest of justice. Alternatively, to the extent that venue may be proper, the Court finds that dismissal is appropriate because the federal courts lack subject matter jurisdiction over Counts I, II, III, VIII, IX, and XII in their entirety and Counts IV, V, VI, VII, X, XI, and XIII to the extent they assert claims on behalf of American Pride Trust. The Court also finds that Laukus has conceded that Counts IV, V, VI, VII, X, XI, and XIII are untimely and therefore may be dismissed on that alternative basis.

For the foregoing reasons, the Court shall GRANT Defendant's [6] Motion to Dismiss

and dismiss this case in its entirety. An appropriate order shall accompany this Memorandum Opinion.

Date: March 8, 2010

/s/
**COLLEEN KOLLAR-KOTELLY**
United States District Judge